AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

Aug 06 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ VeronicaCota        DEPUTY

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) |
| Midnight Green Apple iPhone   Model: 11 Pro Max Seized as FP& F: 2024255200008901 Item: 002 IMEI: 35284811891350 | Case No.   24MJ8665 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

❏ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*

*Applicant's signature*

Border Patrol Agent Fernando Quiroz

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date:   08/05/2024

*Judge's signature*

City and state:  El Centro, California          HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE

*Printed name and title*

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**        Midnight Green Apple iPhone
           Model: 11 Pro Max
           Seized as FP& F: 2024255200008901 Item: 002
           IMEI: 35284811891350
           Seized from Ignacio Emmanuel INZUNZA
           **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-6 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 29, 2024, up to and including July 29, 2024, and is limited to the following:

a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.    tending to identify the user of, or persons with control over or access to, the Target Device;

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.      I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**            Midnight Green Apple iPhone
                    Model: 11 Pro Max
                    Seized as FP& F: 2024255200008901 Item: 002
                    IMEI: 35284811891350
                    Seized from Ignacio Emmanuel INZUNZA
                    **(Target Device #1)**

**A-2:**            Purple Apple iPhone
                    Model: 14 Pro
                    Seized as FP& F: 2024255200008901 Item: 003
                    Seized from Britney Michelle SOLIZ
                    **(Target Device #2)**

**A-3:**            Pink Vivo Cellphone
                    Model: Y71
                    Seized as FP& F: 2024255200008901 Item: 006
                    Seized from Roberto Armando ARZATE-Reyes
                    **(Target Device #3)**

**A-4:**            Green Samsung Galaxy Cellphone
                    Model: S23 Ultra
                    Seized as FP& F: 2024255200008901 Item: 004
                    IMEI: 355149496407640
                    Seized from Jesus Manuel LAZCANO-Cerrillo
                    **(Target Device #4)**

**A-5:**            Black Senwa Disco Cellphone
                    Model: S301A
                    Seized as FP& F: 2024255200008901 Item: 005
                    Seized from Luis Miguel RODRIGUEZ-Parra
                    **(Target Device #5)**

**A-6:**     Black Samsung Galaxy Cellphone
             Model: A13
             Seized as FP& F: 2024255200008901 Item: 007
             IMEI: 355120931282229
             Seized from Raul GONZALEZ-Mendoza
             **(Target Device #6)**

as further described in Attachments A-1 to A-6, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrant relates to the investigation and prosecution of Britney Michelle SOLIZ (SOLIZ), Ignacio Emmanuel INZUNZA (INZUNZA), and Roberto Armando ARZATE-Reyes (ARZATE) for transportation of illegal aliens Raul GONZALEZ-Mendoza (GONZALEZ), Jesus Manuel LAZCANO-Cerrillo (LAZCANO), and Luis Miguel RODRIGUEZ-Parra (RODRIGUEZ) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from SOLIZ, INZUNZA, ARZATE, and the Material Witnesses on or about July 28, 2024, incident to the arrest of SOLIZ, INZUNZA, ARZATE, and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have

been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.      The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.      This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.   tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

10.   On July 28, 2024, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group#2 (ASU) were conducting surveillance in Calexico, California. On this date, at approximately 11:30 a.m., the Calexico Border Patrol Station Remote Video Surveillance System operator (RVSS) observed four individuals enter the All-American Canal west of the area known to Calexico Border Patrol Agents as Drop 3, hide in the reeds, swim across the All-American Canal and hide in the reeds on the northside.

11.   Shortly after RVSS observed the individuals, Calexico ASU Agents set up a perimeter in the area and began conducting static surveillance, in order to locate and intercept the vehicle that Calexico ASU Agents believed would travel to the area, pick up the individuals and travel away from the area to the location that the individuals would be harbored until being smuggled further into the United States. RVSS kept consistent visual on the four individuals as exited the All-American canal, travelled north through the desert,

walked across Highway 98, and continued walking northbound until reaching the southside of Interstate 8 where they concealed themselves in the brush. After hiding south of Interstate 8, the four individuals ran across Interstate 8 and concealed themselves in the brush approximately fifty yards north of Old Highway 80 which parallels Interstate 8 on the northside. At this time, the four individuals were north of mile marker 63. Calexico ASU Agents maintained visual on the area until approximately 5:00 p.m., when the El Centro ASU#2 took over surveillance.

12.    ASU Agents and RVSS kept constant visual on the four individuals for hours and watched as the four individuals would hide behind brush, walk closer to Interstate 8 and conceal themselves again. At approximately 7:35 p.m., RVSS and ASU Agents watched as the four individuals stood up and ran to the northside of Interstate 8. As the four individuals reached the northside of Interstate 8, ASU Agents and RVSS watched as a charcoal gray Honda Civic (Honda) bearing Arizona license plates slowed down, pulled over, and came to a complete stop. As the Honda stopped, all four individuals ran to the Honda and entered the back seat of the Honda. Once all four individuals were inside of the Honda, the Honda merged back onto the westbound lanes of Interstate 8 and continued travelling westbound.

13.    As the Honda was travelling westbound, ASU Agents positioned their unmarked service vehicles behind the Honda and watched as it travelled westbound on Interstate 8, exited Interstate 8 at the Highway 115 Exit, travelled southbound over the overpass and merged back onto the eastbound lanes of Interstate 8. As the Honda continued travelling eastbound on Interstate 8, ASU agents again positioned their unmarked service vehicles behind the Honda and continued to watch as it travelled back towards Yuma Arizona.

14.    At this time, ASU Agents firmly believed that the Honda was travelling back towards Yuma, Arizona. ASU Agents requested a Calexico Border Patrol Agent operating a fully marked Border Patrol service vehicle to assist with a vehicle stop to perform an immigration inspection on all occupants within the Honda. As the Honda passed the

Highway 98 Exit, Border Patrol Agent (BPA) P. Nunez positioned his fully marked service vehicle behind the Honda and activated the emergency lights and sirens. After BPA P. Nunez activated the emergency lights and sirens, the Honda slowed down, pulled over and came to a complete stop.

15.    ASU Agents approached the Honda with Border Patrol markings and insignia fully visible and identified themselves as a Border Patrol Agents. BPA-I L. Heipt questioned the driver, later identified as SOLIZ, as to her citizenship. SOLIZ stated that she was a United States citizen. BPA-I S. Ley questioned the front seat passenger, later identified as INZUNZA, as to his citizenship. INZUNZA stated that he was a United States citizen. BPA-I A. Botello questioned the four back seat passengers, as to their citizenship. All four individuals admitted to being in the United States illegally. The four subject individually admitted to being citizens of Mexico. All four subjects individually admitted that they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. SOLIZ, INZUNZA and the four illegal aliens were placed under arrest and were transported to the Calexico Border Patrol Station where their biographical data was taken and entered.

16.    During a post-Miranda interview, Principal SOLIZ stated she was born in Yuma, AZ and currently lives in Yuma with her three minor children. SOLIZ stated that she took her brother's vehicle without his permission because he is out of town. SOLIZ said she and her friend drove to El Centro to the marijuana dispensary at the Imperial Valley Mall. SOLIZ clarified that her friend is Ignacio INZUNZA. After going to the mall, she and INZUNZA returned to Yuma.

17.    Once back in Yuma, Nacho asked INZUNZA if she would do him a favor and go pick up one of his family members and take them to Phoenix. SOLIZ agreed and they drove back towards El Centro. SOLIZ said they stopped in the desert because her car was overheating and once, they stopped, four people entered her car. SOLIZ said that once the people entered her car, she knew they were illegal aliens because it was obvious and that she was now involved in alien smuggling.

18.     SOLIZ said that INZUNZA was giving the illegal aliens instructions in Spanish, but she does not speak Spanish, so she did not know exactly what he was telling them. SOLIZ said she thinks INZUNZA was telling the aliens to hide because her car has no tint, and it was in the middle of the day. SOLIZ said that INZUNZA has offered her alien smuggling jobs in the past, but she has always declined them until today. After the aliens got in the car, SOLIZ said they were already in the car, so she kept driving and decided to take the aliens to Phoenix. SOLIZ said she was going to be compensated for the job via gas money from INZUNZA. SOLIZ asked if she could call her friend to pick up her children and no further questions were asked.

19.     During a post-Miranda interview, Principal ARZATE stated that he is a citizen and national of Mexico without any travel or immigration documents that would allow him to enter, be in or remain legally in the United States. ARZATE stated that he lived in Tijuana, Mexico for the last year and had work as a foot guide for asylum seekers crossing the border of Mexico and The United States. ARZATE stated he recently moved to Mexicali, Baja California and started working for a smuggler.

20.     ARZATE stated he was successful crossing a pair of females and guiding them to Interstate 8 on July 26, 2024. ARZATE stated they were transported to a parking lot with unknown stores and the females were transferred to another unknown vehicle. ARZATE stated he was dropped at the Calexico Port of Entry, and he walked back south. ARZATE stated he gets paid 400 dollars for each illegal immigrant he crosses and guides.

21.     ARZATE stated that today he was instructed by the smuggler to cross a group of three people and guide them to Interstate 8 to wait for a load vehicle. ARZATE stated after five hours of waiting for a vehicle, he and the other three illegal immigrants were getting dehydrated from being in the middle of the desert waiting. ARZATE stated he was called by the smuggler and told that a Honda Civic was the vehicle that would be picking them up. ARZATE stated that all four got in the back seat of the Honda Civic and were taken away. ARZATE stated that after a couple of minutes they were stopped by United States Border Patrol Agents and arrested.

22.     Material Witness GONZALEZ-Mendoza stated he was born in Culiacan, Mexico, and currently resides in Mexico. GONZALEZ stated he is a citizen of Mexico. GONZALEZ stated that he does not have any legal documents allowing him to live, work or remain in the United States legally. GONZALEZ stated he traveled to Tijuana, Baja California about a week ago. GONZALEZ stated he arrived at Mexicali on yesterday's date via bus. GONZALEZ stated he made arrangements with an unknown smuggler in Culiacan to be illegally smuggled into the United States. GONZALEZ stated he paid around $7,500 United States dollars. GONZALEZ stated his destination was Corona, California to work.

23.     Material Witness LAZCANO-Cerrillo stated he was born in Culiacan, Mexico, and currently resides in Mexico. LAZCANO stated he is a citizen of Mexico. LAZCANO stated that he does not have any legal documents allowing him to live, work or remain in the United States legally. LAZCANO stated he traveled to Mexicali, Baja California on yesterday's date via bus. LAZCANO stated he made arrangements with an unknown smuggler at the bus station to be illegally smuggled into the United States and pay around $13,000 United States dollars. LAZCANO stated his destination was Christmas Valley, Oregon.

24.     Material Witness RODRIGUEZ-Parra stated that he is a citizen and national of Mexico without any travel or immigration documents that would allow her to enter, be in or remain legally in the United States. RODRIGUEZ said he was born in Guerrero, Mexico. RODRIGUEZ said that his father made all the smuggling arrangements with a Mexicali smuggler and agreed to pay a total $9,000.00 U.S. dollars. RODRIGUEZ's destination was California. RODRIGUEZ said that on July 28, 2024, he travels via bus from Tijuana to Mexicali and once in Mexicali he was picked up and transported to a house in Mexicali. RODRIGUEZ said he was transported to the U.S/Mexico border fence in the middle of the desert. RODRIGUEZ said he was guided by a young male and crossed the border fence by climbing with the help of a rope. RODRIGUEZ stated that they walked until they arrived at Interstate 8. RODRIGUEZ stated the foot guide, later identified as Roberto Armando ARZATE-Reyes, was communicating with smugglers in Mexico for the

load vehicle and they waited approximately seven hours in the middle of the desert. RODRIGUEZ stated a beige sedan arrived at their location and he and the other three subjects got in the back seat. RODRIGUEZ said the female driver drove for approximately 15 minutes and was then stopped by United States Border Patrol. RODRIGUEZ stated that all occupants of vehicle got arrested after they admitted to being in the United States illegally.

25.     During a search incident to arrest of SOLIZ, INZUNZA, ARZATE and the Material Witnesses, six cellphones were found: a green Apple iPhone (Target Device #1) was found on INZUNZA's person by BPA-I S. Ley and INZUNZA claimed ownership. A purple Apple iPhone (Target Device #2) was found by BPA-I Heipt on SOLIZ's person and SOLIZ claimed ownership.  A pink Vivo cellphone (Target Device #3) was found on ARZATE'S person and ARZATE claimed ownership. A green Samsung Galaxy cellphone (Target Device #4) was found on LAZCANO's person and LAZCANO claimed ownership. A black Senwa Disco cellphone (Target Device #5) was found on RODRIGUEZ's person and RODRIGUEZ claimed ownership. A black Samsung Galaxy cellphone (Target Device #6) was found on GONZALEZ's person by BPA-I Botello and GONZALEZ claimed ownership. All cellphones were seized as evidence.

26.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on June 29, 2024, up to and including July 29, 2024, the day after the arrest of SOLIZ, INZUNZA, ARZATE and the Material Witnesses.

## METHODOLOGY

27.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is

subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

30.    Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that SOLIZ, INZUNZA, ARZATE and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by SOLIZ, INZUNZA, ARZATE, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.


I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 5th day of August, 2024.


_____   1:52 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**               Midnight Green Apple iPhone
Model: 11 Pro Max
Seized as FP& F: 2024255200008901 Item: 002
IMEI: 35284811891350
Seized from Ignacio Emmanuel INZUNZA
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**            Purple Apple iPhone
                    Model: 14 Pro
                    Seized as FP& F: 2024255200008901 Item: 003
                    Seized from Britney Michelle SOLIZ
                    **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**                    Pink Vivo Cellphone
                                   Model: Y71
                                   Seized as FP& F: 2024255200008901 Item: 006
                                   Seized from Roberto Armando ARZATE-Reyes
                                   **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**          Green Samsung Galaxy Cellphone
              Model: S23 Ultra
              Seized as FP& F: 2024255200008901 Item: 004
              IMEI: 355149496407640
              Seized from Jesus Manuel LAZCANO-Cerrillo
              **(Target Device #4)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-5
## PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**          Black Senwa Disco Cellphone
              Model: S301A
              Seized as FP& F: 2024255200008901 Item: 005
              Seized from Luis Miguel RODRIGUEZ-Parra
              **(Target Device #5)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-6
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-6:**          Black Samsung Galaxy Cellphone
                  Model: A13
                  Seized as FP& F: 2024255200008901 Item: 007
                  IMEI: 355120931282229
                  Seized from Raul GONZALEZ-Mendoza
                  **(Target Device #6)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-6 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 29, 2024, up to and including July 29, 2024, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.